**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM CORNELL | ) | CASE NO.: |
| 2929 Maple Drive | ) | |
| Twinsburg, OH 44087 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR DECLARATORY |
| | ) | JUDGMENT AND INJUCTIVE RELIEF |
| vs. | ) | |
| | ) | |
| CITY OF TWINSBURG | ) | |
| c/o Theodore Yates, Mayor | ) | |
| 10075 Ravenna Road | ) | |
| Twinsburg, OH 44087 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff WILLIAM CORNELL, for his Verified Complaint against Defendant CITY OF

TWINSBURG alleges as follows:

## INTRODUCTION

1.      This is an action brought under 42 U.S.C. § 1983 for declaratory judgment

preliminary and permanent injunction, actual and nominal damages, and other relief arising

from the unconstitutional policies, practices, and threats of Twinsburg, through its agents and

employees.  Defendant's policies, practices, and conduct threaten Plaintiff with irreparable

harm to his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States

Constitution.  The harm may only be remedied by a ruling from this Court.

2.      Defendant has impeded and threatened to further unconstitutionally impede

Plaintiff in his right to be free from unlimited warrantless searches without probable cause by

maintaining, implementing, and enforcing vague policies that (i) threaten Plaintiff and others

with warrantless searches of rental property without probable cause; (ii) violate Plaintiff's

reasonable expectation of privacy; and (iii) retaliate against Plaintiff for exercising his Fourth Amendment rights by either (a) pressing criminal charges against him, or (b) depriving him of property rights, including but not limited to the right to use his property by renting it to others.

3. Twinsburg's policies, practices, and customs will irreparable harm Plaintiff unless it is enjoined from violating his Fourth Amendment rights.

4. Plaintiff seeks declaratory judgment and injunctive relief determining that the offending provisions of the City's Rental Dwelling Housing License Code, codified as Chapter 1369 of The City of Twinsburg Building Code, are unconstitutional as applied to him and others and that the Code cannot support the issuance of an "administrative" warrant.

## **PARTIES**

5. The Plaintiff is a rental property owner in Twinsburg, Ohio.

6. Plaintiff owns rental homes within the city limits of Twinsburg, Ohio, subject to the Rental Dwelling code and its inspection requirements.

7. Defendant Twinsburg is a municipal corporation in Summit County, Ohio; it is created and exists under the laws of the State of Ohio. In fulfilling its duties, the City acts through various commissions and public officials, including without limitation the Mayor, the Law Director, and other officials.

8. Twinsburg officials implement Twinsburg's Rental Dwelling Housing License Code and enforce its unconstitutional restrictions.

9. Twinsburg's officials implement its policies, practices and customs.

10. Twinsburg, through its officials, threatens Plaintiff with loss of property and criminal charges as a consequence to any attempt to assert a constitutional right to be free from unreasonable searches of his property.

11. Defendant's actions were undertaken under color of state law and deprived Plaintiff of rights protected by the United States Constitution.

12. All acts of the Defendant through its officials, agents, servants, employees or persons acting at its behest or direction, were done and are continuing to be done under the color or pretense of state law.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), because it was brought to prevent imminent deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), because it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action to protect civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and injunctive relief and damages; and under 42 U.S.C. § 1988 to grant Plaintiff's prayer for relief regarding the recovery of costs, including damages, restitution, and reasonable attorney fees.

14. Venue is proper in this judicial district and division under 28 U.S.C. § 1391(b) and Local Rule 3.8 as (i) Defendant is within this judicial district and division, (ii) Defendant

transacts business within this District, and (iii) the conduct complained of occurred within this District.

## FACTUAL ALLEGATIONS

15.     Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated.

16.     On July 12, 2016, Twinsburg passed Ordinance 65-2016, creating Chapter 1369 of the Twinsburg Code – the Rental Dwelling Housing License Code (the "Code").

17.     Ordinance 65-2016 was approved by Mayor Theodore Yates the following day, July 13, 2016.

18.     Ordinance 65-2016 became effective on August 12, 2016.

19.     The Code mandates that owners of one, two, or three-family rental properties obtain a "housing license" to operate rental properties.[1]

20.     Housing licenses must be renewed every three years or upon transfer of ownership of the rental property. Section 1369.12.

21.     Twinsburg charges fees for issuing and renewing rental dwelling permits.[2]

22.     To secure a license, the rental property must undergo inspection[3] and its uses must "comply in all respects with this Code and all other Twinsburg ordinances of the City of Twinsburg," which includes many regulations.[4]

---

[1]      Section 1369.08 reads, in relevant part, "no owner shall let, rent, lease, operate, or allow to be occupied by a family other than that of the owner, any one, two or three-family building in which there are one or two or three rental dwellings unless a housing license as required by this Code is in force."

[2]      Briefly, $50 for a one family rental dwelling, and $75 for a two or three-family rental dwelling. See Exhibit A, Section 1369.09.

[3]      See Exhibit A, Section 1369.10.

[4]      Twinsburg has adopted the "Residential Building Code of Ohio for One, Two and Three-Family Dwellings" (Chapter 1303), the "Ohio Building Code" (Chapter 1305), the "National Electrical Code" (Chapter 1309), and the International Property Maintenance Code (Chapter 1313).

23.      After a license is secured, the Chief Building Official retains the right to inspect the rental property at any time for what he or she determines is "reasonable cause."[5]

24.      The Code grants a broad "right of entry" to the Chief Building Official, which intrudes on the tenants' right of privacy.[6]

25.      The Chief Building Official may revoke a housing license if access is denied to make an inspection.[7]

26.      The Code authorizing the inspections does not specify their scope.[8]

27.      During these inspections, city officials search for evidence that can cause the issuance of a "correction order."[9]

28.      An owner's failure to obtain a housing license or comply with a "correction order" can cause fines, revocation of a housing license, and/or criminal charges.[10]

29.      Through the vast number of regulations in the Twinsburg Building Code, the Chief Building Official's broad discretion in conducting inspections, and the broad scope of the inspections, the Code ensures that one, two, and three-family rental properties are subject to constant scrutiny, diminishing the rights of rental property owners and tenants.

### *Plaintiff's Status*

30.      Plaintiff's use of his properties as rental properties pre-exists the existence of the Rental Dwelling Housing License Code.

---

[5]      See Exhibit A, Section 1369.13(a)-(b).
[6]      The "Chief Building Official or his/her designee, upon presentation of proper identification may enter and inspect, at all reasonable times, the exterior of all rental dwellings."  Further, the "owner, responsible person and/or the occupant shall give free access by appointment, to the interior of any rental dwelling for the purpose of inspection, when an interior inspection has been requested." Section 1369.14.
[7]      See Exhibit A, Section 1369.13(c).
[8]      The Code broadly suggests that the Chief Building Official or his/her designee can make inspections "to determine the condition of rental dwellings in order that he may perform his duty to safeguard the health and safety of the occupants and of the general public." Section 1396.13(a).
[9]      See Exhibit A, Section 1369.10(c).
[10]      See Exhibit A, Section 1369.15(a); Section 1369.99(a), (c).

31.     Plaintiff maintains standing to sue because if he does not consent to warrantless search of his rental property he faces (1) criminal charges and fines; and/or (2) loss of rental income related to his Twinsburg properties.

32.     Plaintiff intends to refuse efforts by Twinsburg to (1) inspect his properties; and (2) collect fees from him to fund the inspection of his properties and others.

33.     Due to this abstention, Plaintiff is in imminent risk of facing criminal charges and/or loss of his property rights in response to this assertion of his Fourth Amendment rights.

34.     Plaintiff is contractually and statutorily obligated to provide his tenants with a fit and habitable property, free from any nuisances and/or other dangerous conditions, and understands and abides by these terms.[11]

## DECLARATORY JUDGMENT AND INJUNCTION
### (28 U.S.C. § 2201, *et seq.*)

35.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully restated.

36.     An actual controversy has arisen and now exists between Plaintiff and Defendant concerning Plaintiff's rights under the United States Constitution.  A judicial declaration is necessary and appropriate.

37.     A state actor is liable under 42 U.S.C. § 1983 if it took "action pursuant to official policy of some nature [that] caused a constitutional tort."[12]

---

[11]     Landlord-Plaintiff is bound by R.C. 5321.04, which states, *inter alia*, as follows: "a landlord who is a party to a rental agreement shall do all of the following:  (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety; (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition; (3) Keep all common areas of the premises in a safe and sanitary condition; (4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by the landlord * * *."

[12]     *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

38.     "[Governmental] liability may be imposed for a single decision by [government] policy makers under appropriate circumstances."[13]

39.     A state actor cannot constitutionally condition the receipt of a benefit, such as a rental permit, liquor license, or an entertainment permit, on an agreement to not exercise one's constitutional rights, particularly one's right to be free from unlimited warrantless searches of private property without probable cause.[14]

40.     Plaintiff desires a judicial determination of his right to be free from unlawful searches, coerced to surrender of property rights and/or privileges, and vague licensing requirements.

41.     To prevent violation of Plaintiff's constitutional rights by Defendant, it is appropriate that a declaratory judgment be issued, under 28 U.S.C. § 2201 and FED. R. CIV. P. 57, declaring unconstitutional, facially and as-applied, all relevant portions of the City of Twinsburg, Ohio Rental Dwelling Code, and Defendant's enforcement policies, practices, and actions related to the Rental Dwelling Housing License Code.

42.     Further, under 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and requested that this Court issue preliminary and permanent injunctions prohibiting the Defendant from enforcing all policies, practices, and conduct reliant on and related to the Rental Dwelling Code's search policies, including but not limited to the Rental Dwelling

---

[13]     *Id*. at 480.

[14]     *Id*, citing *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972) ("For at least a quartercentury, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."); Keyishian v. Board of Regents, 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967) (quoting Sherbert v. Verner, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)) ("It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.").

Housing License Code's search fees and permitting process, to the extent they are unconstitutional, to prevent the ongoing violation of Plaintiff's constitutional rights.

## COUNT I
### VIOLATION OF RIGHT TO DUE PROCESS AND FREEDOM FROM UNCONSTITUTIONAL SEARCHES PURSUANT TO THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)

43.     Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated.

### *Violation of the Unconstitutional Conditions Doctrine*

44.     The Supreme Court's "Unconstitutional Conditions" Doctrine arises from the Due Process guarantees articulated in the Fifth and Fourteenth Amendments to the United States Constitution.

45.     The Supreme Court of the United States has confirmed in many contexts that "government may not deny a benefit to a person because he exercises a constitutional right."[15]

46.     The Supreme Court has further explained that "[t]hose cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."[16]

---

[15]     *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983). See also, e.g., *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 59–60 (2006); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 78, 110 S.Ct. 2729 (1990). In *Perry v. Sindermann*, 408 U.S. 593 (1972), for example, a public college would violate a professor's freedom of speech if it declined to renew his contract because he was an outspoken critic of the college's administration. And in *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974), a county impermissibly burdened the right to travel by extending healthcare benefits only to those indigent sick who had been residents of the county for at least one year.

[16]     *Koontz v St. Johns River Water Management Dist.*, 133 S.Ct. 2586, at 2594 (2013).

47.     The Supreme Court has consistently applied the Unconstitutional Conditions Doctrine within the context of land use permitting.[17]

48.     "[R]egardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them."[18]

49.     In the recent decision of *Baker v. City of Portsmouth*,[19] the Southern District of Ohio cited *Sokolov v. Village of Freeport*[20] in its holding that "[a] property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property."

50.     The right to rent property in Ohio, like the right to exclude others from private property, is not merely a "government benefit," but extends one's private property rights - - rights recognized by the Ohio Constitution and Ohio Supreme Court as "fundamental."

51.     Defendant imminently threatens to pressure Plaintiff and others into forfeiting Fourth Amendment rights by, in response to those rights, (1) withholding newly-required rental permits needed to rent homes in Twinsburg and/or (2) prosecuting rental property owners for criminal violations, should they rent their homes without newly-required rental permits.

---

[17]     *Id*. (explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take."), citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 547, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); *Dolan*, 512 U.S., at 385, 114 S.Ct. 2309 (invoking "the well-settled doctrine of 'unconstitutional conditions' ").
[18]     *Koontz*, supra.
[19]     S.D.Ohio No. 1: 14CV5L2, 2015 WL 5822659, (Oct. 1, 2015).
[20]

52.    Defendant burdens Plaintiff's Fourth Amendment rights by operation of law, through maintaining and enforcing the Rental Dwelling Code.

### Violation of the Fourth Amendment's Search and Seizure Clause

53.    The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

54.    The Fourth Amendment indicates with some precision the places and things encompassed by its protections: persons, houses, papers, and effects.

55.    The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When "Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred."[21]

56.    The Supreme Court has declared warrantless searches "per se unreasonable."[22]

57.    Since *Camara v. Mun. Court of City and County of San Francisco* and *See v. City of Seattle*, each decided in 1967, building code search statutes have been held unconstitutional unless they require a search warrant supported by administrative probable cause.[23]

58.    *Camara* held that administrative inspections are significant intrusions on Fourth Amendment rights for which warrants are required.

---

[21]    *United States v. Jones*, 132 S.Ct. 945, 950–951, n. 3 (2012).

[22]    *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (internal quotation marks omitted); see *Groh v. Ramirez*, 540 U.S. 551, 559 (2004).

[23]    *Camara v. Mun. Court of City and County of San Francisco*, 387 U.S. 523 (1967).

59.     *Camara* further held that warrantless searches of residential rental property by municipal inspectors violated the Fourth Amendment protection against unreasonable searches and seizures.[24]

60.     In *Baker v. City of Portsmouth*, the Southern District of Ohio recognized the United States Supreme Court's disavowal of regulations on rental properties that force owners and tenants to consent to a warrantless inspection or face criminal charges.[25]

61.     In *See v. City of Seattle*,[26] the Supreme Court held that, like the search of a private home, the search of a business is presumptively unreasonable if conducted without a warrant, as a businessman's Fourth Amendment guarantees are "placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant,"[27] as, "[i]t is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence."[28]

62.     In *Hodgins v. U.S. Department of Agriculture*, the Sixth Circuit Court of Appeals held "for warrantless searches to be justifiable under a regulatory scheme, the object of the search must be something that can be quickly hidden, moved, disguised, or altered beyond recognition, so that only a surprise inspection could be expected to catch the violations.  If a regulation is similar to a building code (as in *See v. Seattle*), where violations will be harder to conceal, the need for surprise will be less pressing, and warrantless searches will more likely be unconstitutional."[29]

---

[24]     *Id.*, at 528.
[25]     *Baker v. City of Portsmouth*, S.D.Ohio No. 1: 14CV5L2, 2015 WL 5822659, *5 (Oct. 1, 2015)
[26]     387 U.S. 541.
[27]     *Id.*, at 543.
[28]     *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312 (1978).
[29]     238 F.3d 421 (2000).

63.     An exception to the warrant requirement has been recognized for searches of pervasively or closely regulated industries.[30]

64.     Plaintiff is not doing business in a "pervasively or closely regulated industry."

65.     The Southern District of Ohio, in *Baker v. City of Portsmouth*, held that the closely regulated industry exception does not apply to the rental business.[31]

66.     Even if Plaintiff operated in such an industry, in *New York v. Burger*,[32] the Supreme Court enunciated three criteria that must be met before any such warrantless inspection or search is constitutionally acceptable: "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made.  Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.' * * * Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'"

67.     The Rental Dwelling Housing License Code's inspection requirement is warrantless.

68.     A rental home owner's rental property is (1) a "house," as specified in the Fourth Amendment; and (2) at least equivalent to the "commercial property" held to be entitled to Fourth Amendment protection.

---

[30]     See *New York v. Burger*, 482 U.S. 691 (1987) (junkyard industry); *Donovan v. Dewey*, 452 U.S. 594 (1981) (coal mining); *United States v. Biswell*, 406 U.S. 311 (1972) (firearms); *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970) (liquor); see also *United States v. Acklen*, 690 F.2d 70 (6th Cir.1982) (pharmacies); *Marshall v. Nolichuckey Sand Co.*, 606 F.2d 693 (6th Cir.1979) (sand and gravel industry), cert. denied, 446 U.S. 908 (1980).

[31]     *Baker v. City of Portsmouth*, S.D.Ohio No. 1: 14CV5L2, 2015 WL 5822659, *5 (Oct. 1, 2015), citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313, 98 S.Ct. 1816, 1820, 56 L.Ed.2d 305 (1978).

[32]     482 U.S. 691 (1987).

69.     The Rental Dwelling Housing License Code's inspection requirement, as a physical intrusion into a home to collect information that can later be used in a criminal prosecution, is a "search," as contemplated by the Fourth Amendment.

70.     The warrantless inspection of rental homes within Twinsburg is not "necessary to further the regulatory scheme"[33] here:  the City could operate a complaint-driven scheme that relies upon probable cause, or that enlists property owners' use of private building inspectors.

71.     The Rental Dwelling Housing License Code searches violate Plaintiff's right to be free from unreasonable searches by (1) coercing property owners' consent to such searches, and (2) violating tenants' reasonable expectation of privacy, (3) without a warrant requirement.

### *Violation of the Fourth Amendment's Warrant Clause*

72.     The second clause of the Fourth Amendment affirms "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

73.     The Fourth Amendment to the United States Constitution guarantees Plaintiff the right to refuse warrantless government inspections of their home unless the government first secures a valid administrative search warrant issued by a neutral party authorized to issue an administrative search warrant, or unless an emergency exists.

74.     The Defendant's Rental Dwelling Housing License Code does not authorize Twinsburg to obtain a warrant to search Plaintiff's houses because the regulatory scheme (1) does not provide for a warrant to be obtained; (2) is not predicated on neutral principles; (3)

---

[33]     See *McLaughlin v. Kings Island, Div. of Taft Broadcasting Co.*, 849 F.2d 990 (6th Cir. 1988).

is tantamount to a general warrant inviting an open search; and (4) does not require probable cause, but merely "reasonable cause."[34]

75.    Twinsburg's Rental Dwelling Housing License Code is not predicated on neutral principles because it arbitrarily discriminates against one, two, and three-family rental homes, while refraining from inspecting larger-capacity rental properties or owner-occupied properties of any kind, irrespective of the properties' conditions.

### COUNT II
### VIOLATION OF RIGHT TO EQUAL PROTECTION PURSUANT TO THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (42 .S.C. § 1983)

76.    Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated.

77.    The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

78.    The Equal Protection Clause prohibits states from making distinctions that either (1) burden a fundamental right, (2) target a suspect classification, or (3) intentionally treat one differently from others similarly situated with no rational basis for the difference. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir.2005).

79.    To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir.2006).

---

[34]        See Exhibit A, Section 1369.14.

80.    The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. *McLaughlin v. State of Florida*, 379 U.S. 184, 189—190.  It also imposes a requirement of some rationality in the nature of the class singled out.

81.    The Equal Protection Clause further requires that, in defining a class subject to legislation, the distinctions drawn have "some relevance to the purpose for which the classification is made."  *Baxstrom v. Herold*, 383 U.S. 107, 111; *Carrington v. Rash*, 380 U.S. 89, 93; *Louisville Gas Co. v. Coleman*, 277 U.S. 32, 37; *Royster Guano Co. v. Commonwealth of Virginia*, 253 U.S. 412, 415.

82.    Governmental classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis," as "arbitrary selection can never be justified by calling it classification."  *Id.*, see also *Atchison, T. & S.F.R. Co. v. Matthews*, 174 U.S. 96, 104-105; *American Sugar Ref. Co. v. Louisiana*, 179 U.S. 89.

83.    "Simply stated, the Equal Protection Clauses require that individuals be treated in a manner similar to others in like circumstances." *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, ¶ 6.

84.    Courts must reach and determine whether the classifications drawn in a statute are reasonable in light of its purpose-in this case.

85.    Twinsburg professes the Code's purpose is "to establish minimum standards governing the maintenance and repair of rental dwellings and their exterior property areas in such condition so as not to constitute a blighting or deteriorating influence on the neighborhood and the community…"

86.     Though Twinsburg professes that the Code benefits the "neighborhood and community" as a whole, it does not apply to multi-family rental dwellings comprising four or more units.

87.     Plaintiff does not own a multi-unit dwelling of greater than three units within Twinsburg.

88.     Twinsburg is home to several larger-scale apartment complexes not subject to the permit requirements of the Code.

89.     Those who rent dwellings in complexes with four or more units and those who rent dwellings in one, two, and three-family buildings are similarly situated.

90.     Twinsburg has aggrandized itself with the power to search each and every one, two, and three-family rental property, while exempting rental properties of other similarly situated owners.

91.     The Code's search requirement is arbitrary and not predicated on neutral principles because it arbitrarily discriminates against one, two and three-family rental properties and tenants of those properties, while refusing to inspect either (1) all multi-family rental properties; or (2) owner-occupied properties of any kind.

92.     The singling out of one, two, and three-family rental properties, including Plaintiff's properties, while ignoring all other apartment rental dwellings and owner-occupied homes, is neither necessary nor rationally related to a legitimate government purpose.

93.     There is neither a necessary nor rational basis for classifying one, two, and three-family rental homes and their owners and tenants as subject to an intrusive and comprehensive government search, whether with or without a warrant, while exempting

other multi-family rental properties and/or owner-occupied properties and their owners and occupants.

94.     The Rental Dwelling Code burdens Plaintiff's fundamental Fourth Amendment rights while exempting similarly-situated rental property owners from similar burdens.

95.     The mandates of the Rental Dwelling Code violate Plaintiff's right to equal protection of the law facially and applied.

**COUNT III**
**UNJUST ENRICHMENT**

96.     Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated.

97.     Twinsburg may have funds it is not entitled to retain.

98.     A suit seeking the return of specific funds wrongfully collected or held by a state actor may be maintained in equity. *Santos v. Ohio Bur. of Workers' Comp.*, 101 Ohio St.3d 74, syllabus.  *Accord Judy v. Ohio Bur. of Motor Veh.*, 100 Ohio St.3d 122; *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.*, 62 Ohio St.3d 97 (1991).

99.     Unjust enrichment exists when there is: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

100.     Ohio law does not require that the benefitted party act improperly in some fashion before an unjust enrichment claim can be upheld; instead, unjust enrichment can result "from a failure to make restitution where it is equitable to do so. That may arise when a person has passively received a benefit which it would be unconscionable for him to retain" without

paying compensation. (Citations omitted.) *Advantage Renovations, Inc. v. Maui Sands Resort, Co., L.L.C.*, 2012-Ohio-1866, ¶ 33.

101.    Through its inspection and permitting fee assessments, Twinsburg may have acquired funds rightfully belonging to Plaintiff and others.

102.    Defendant sought acquisition of these funds to fund unconstitutional searches of Plaintiff's properties and the properties of others.

103.    It would be unconscionable for Twinsburg to retain and not return permitting fees acquired from Plaintiff and others.


## CONCLUSION

104.    Criminal punishment is an irreparable harm.

105.    Loss of constitutionally-protected Fourth, Fifth, and Fourteenth Amendment rights and constitutionally-protected property rights causes irreparable harm.

106.    Enforcement of constitutional rights is in the public interest.

107.    Defendant's enforcement of the Rental Dwelling Housing License Code violates the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by imposing an unconstitutional condition upon Plaintiff's lawful exercise of his property rights.

108.    The Code is unconstitutional as applied to Plaintiff and those similarly situated - - property owners who operated rental homes prior to the Rental Dwelling Housing License Code, and have created no dangerous conditions or other emergencies on their properties.

109.    The Code's search requirement is unconstitutional.

110.    The Code's search requirement cannot be severed from the Code's "permit fee" and "permitting" requirements.

111.    The unconstitutional portions of the Code cannot be severed from the Code's lawful portions.

112.    The Rental Dwelling Housing License Code fails to meet the requirements to obtain a search warrant.

113.    Because of Defendant's policies and practices described above, Plaintiff and those similarly situated face imminent threat of irreparable injury and will continue to suffer irreparable injury by being deprived of their rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution.

114.    To prevent further violation of constitutional rights by Defendant, it is appropriate and proper that a declaratory judgment be issued, under 28 U.S.C. 2201 and Fed. Rule of Civil Procedure 57, declaring the Twinsburg's enforcement of the Rental Dwelling Housing License Code to be unconstitutional.

115.    Under 28 U.S.C. 2202 and Fed Rule of Civil Procedure 65, it is appropriate and requested that this Court issue a preliminary and permanent injunction enjoining Twinsburg, Ohio from enforcing the Rental Dwelling Housing License Code against Plaintiff and those similarly situated.

116.    As a direct and proximate result of the Rental Dwelling Code's mandates and punishments, Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments have been violated and Plaintiff has suffered injury and damages, where he has been forced to endure and fund unlawful government searches of his property.

117.    Defendant's actions are the direct and proximate result of its policies, practices and customs as adopted and implemented.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant, and that the Court:

(1) Declare that the search provision in the City of Twinsburg Rental Dwelling Housing License Code authorizing warrantless searches without probable cause is unconstitutional, both facially and as applied to Plaintiff and those similarly situated;

(2) Declare that the Rental Dwelling Code wholly reliant upon the unconstitutional search, including but not limited to the monetary extraction for inspections and the permit requirement, violates Plaintiff's Fourth Amendment rights;

(3) Declare that the Rental Dwelling Code is insufficient, without more, for the City to obtain an administrative warrant;

(4) Declare that by imposing monetary assessments on Plaintiff and others, precipitated by the Rental Dwelling Housing License Code, Defendant City of Twinsburg has been and continues to be unjustly enriched;

(5) Enjoin Defendant from directly enforcing the Rental Dwelling Housing License Code's warrantless search requirement;

(6) Enjoin Defendant from indirectly enforcing the Rental Dwelling Housing License Code's warrantless search requirement by criminally prosecuting Plaintiff and others, stripping them of the right to rent their property, or otherwise;

(7) Enjoin Defendant from attempting to seek and obtain a warrant, predicated on the Rental Dwelling Housing License Code, to search Plaintiff's properties;

(8) Mandate the return of Rental Dwelling Code funds paid by Plaintiff and others to Defendant City of Twinsburg where the City has been unjustly enriched;

(9) Under 42 U.S.C. §1988 and other applicable law, award Plaintiff costs and expenses in

bringing this action, including their reasonable attorneys' fees;

(10)      Award nominal damages against Defendant and for Plaintiff to compensate

Plaintiff for violations of his constitutional rights;

(11)      Reimburse Plaintiff and others for amounts they have paid, in inspection fees

related to unconstitutional inspections, to Defendant City of Twinsburg; and

(12)      Grant such other and further relief as the Court deems equitable, just, and proper.


Respectfully Submitted,

*/s/ Warner Mendenhall*
Warner Mendenhall, 0070165
Attorney for Plaintiff
190 N. Union St., Suite 201
Akron, OH 44304
330.535.9160
fax 330.434.9743
warnermendenhall@gmail.com